UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------------------------X
SERGIO GONZALEZ

       Plaintiff,                                **COMPLAINT**
                                                **JURY TRIAL DEMANDED**
                                       Index No. 15-CV- **9250**

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE
DEPARTMENT and NEW YORK CITY POLICE DEPARTMENT
DETECTIVE MASSE IN BOTH HIS INDIVIDUAL AND
OFFICIAL CAPACITY and JOHN DOE INTERNAL
AFFAIRS BUREAU SUPERVISING OFFICERS IN BOTH THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES

       Defendants.

 ------------------------------------------------------------------------X

## COMPLAINT and DEMAND FOR JURY TRIAL

Plaintiff Sergio Gonzalez ("Mr. Gonzalez" or "Plaintiff"), by and through his undersigned

counsel, Roger S. Blank, P.C. hereby alleges as follows.

## PRELIMINARY STATEMENT

1. On September 22, 2014, during what should have been a routine appearance for Mr. Gonzalez,

   a former New York City Police Officer, at the Internal Affairs Bureau ("IAB") of the New

   York City Police Department, Plaintiff was subject to an illegal

   strip-search conducted by Detective Masse under instructions from his superior  officers, that

   was designed to degrade and harass Plaintiff.

2. Plaintiff was assigned to report to the Internal Affairs Bureau on the day of the incident due to

   the pendency of outstanding disciplinary charges.  Shortly after Plaintiff's arrival and sign-in,

   Detective Masse ordered Plaintiff into a private room, where he was than order to unbutton his

shirt and present his naked upper body for inspection and to drop his shorts and present his naked lower body for inspection.  Plaintiff informed Detective Masse that he was not wearing any underwear, and was this really necessary and why was this being done.  Although Detective Masse stated that he did not believe Plaintiff to have any illicit items on his person, and he did not believe Plaintiff was under the influence of any illicit substances, he nonetheless was ordered by his IAB superiors to conduct a body search of Mr. Gonzalez.  Mr. Gonzalez exposed his naked upper body for inspection and pulled his shorts down forcing him to expose the pubic and buttocks regions of his body for inspection by Detective Masse.  At the time of the search, Plaintiff was not suspected of having engaged in any illegal activity, was not under arrest and no illicit substances or items were found on his person.

3. Defendant Masse's actions constitute an egregious breach of the New York City Police Department ("NYPD") rules and regulations, which impose rigorous requirements upon police officers that wish to physically search an individual.

4. Defendant Masse violated Mr. Gonzalez's rights under the Constitution, including Mr. Gonzalez's fundamental right to bodily integrity.  Mr. Gonzalez brings this civil rights action to seek relief for Defendant violation of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments. Mr. Gonzalez seeks declaratory relief that her Fourth and Fourteenth Amendment rights were violated.  In addition, Mr. Gonzalez seeks compensatory and punitive damages, an award of attorneys' fees and costs, and such other relief as this Court deems equitable and just.

**JURISDICTION and VENUE**

5.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

6.  Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

7.  Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district.

**PARTIES**

8.  Plaintiff SERGIO GONZALEZ is, and was at all times relevant to this action, a resident of New York County in the State of New York.

9.  Defendant, THE CITY OF NEW YORK, is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a Police Department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by New York City Police Department ("NYPD").

10. Detective Masse Officer and John Doe Internal Affairs Bureau Officers are and/or were at all relevant times employees of the New York City Police Department, assigned to the Internal Affairs Bureau headquarters on Hudson Street, New York, New York, and acting as employees and agents thereof.  Defendant Masse is sued in both his official and individual capacity. Defendant Masse's first name is currently unknown.

3

11. For all claims under federal law, the individual defendants are being sued herein in their individual and official capacities.

12. For all claims under state law, the individual defendants are being sued in their individual capacities only.

13. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, detectives, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, detectives, employees and agents of the NYPD.

14. The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice and gross disregard for plaintiff's rights.

15. At all relevant times, the individual defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## FACTS

16. On September 22, 2014, Mr. Gonzalez was a New York City Police Officer on suspended paid duty pending the resolution of NYPD disciplinary charges, and reported for duty to his assigned location, IAB headquarters located at 315 Hudson Street, New York, New York.

17. After his arrival and sign-in at approximately 2:52p.m. Defendant Masse ordered Mr. Gonzalez to accompany him to a private interview room.  As a NYPD police officer at the time of this

4

incident, Mr. Gonzalez had no alternative but to comply with all orders issued to him buy

supervising members of IAB or he would face additional disciplinary action for failure to

comply with an order.  Accordingly, Plaintiff accompanied Defendant Masse as ordered and

exposed his body as he was also ordered to do.

18. While in the private interview room, Defendant Masse ordered Mr. Gonzalez to unbutton his

shirt and present his naked upper body for inspection and to drop his shorts and present his

naked lower body for inspection.  Plaintiff informed Detective Masse that he was not wearing

any underwear, and was this really necessary and why was this being done.

19. Detective Masse stated that he did not believe Plaintiff to have any illicit items on his person,

and he did not believe Plaintiff was under the influence of any illicit substances, he nonetheless

was ordered by his IAB superiors to conduct a body search of Mr. Gonzalez.

20. In accordance with Defendant Masse's directives, Mr. Gonzalez exposed his naked upper body

for inspection and pulled his shorts down forcing him to expose the pubic and buttocks regions

of his body for inspection by Detective Masse.

21. At the time of the search, Plaintiff was not suspected of having engaged in any illegal or

unauthorized activity, was not under arrest and no illicit substances or items were found on his

person.

22. Defendant Masse's search of Mr. Gonzalez constituted an egregious violation of the NYPD's

Patrol Guide Procedures involving strip searches. (Annexed hereto as Exhibit #1)

23.  Patrol Guide Section 208-05 Paragraph C states that a strip search of an arrested prisoner may

not be conducted routinely in connection with an arrest, must be first approved my an arresting

officer's immediate supervisor or the borough Court Section supervisor.  A strip search may

only be conducted when the arresting officer reasonably suspects that weapons, contraband or

evidence may be concealed upon the person or in clothing in such a manner that they may not be discovered in previous search methods.  A supervisor will authorize a strip search only when an arresting officer has articulated a reasonable suspicion that the individual is concealing evidence, contraband or a weapon.

24. Defendant Masse stated in sum and substance prior to the search that he did not believe Mr. Gonzalez was in possession of any weapons, contraband or evidence.  Mr. Gonzalez was never placed under arrest prior to or after him being strip-searched.


## AS AND FOR A FIRST CAUSE OF ACTION

### (Claims Pursuant to 42 U.S.C. § 1983 for Violation of the Fourteenth Amendment)

25. Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

26. Defendant Masse's and John Doe IAB officers behavior amounts to an exercise of power without any reasonable justification in the service of a legitimate governmental objective, and is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.

27.  Defendant Masse and John Doe IAB officers acted under color of state law to violate Mr. Gonzalez's substantive due process right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

28. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Gonzalez suffered and continues to suffer psychological pain, humiliation, and mental anguish.

29. Defendant Masse and John Doe IAB supervising officers who directed Defendant Masse's actions exhibited gross negligence and/or reckless and/or callous indifference to Mr.

Gonzalez 's federally protected rights, entitling Mr. Gonzalez to an award of punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Claims pursuant to 42 U.S.C. § 1983 for Violation of the Fourth Amendment)**

30. Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

31. Defendant Masse and John Doe IAB supervising officers subjected Mr. Gonzalez to an unduly

    intrusive search without reasonable suspicion. As such, Defendant Masse and John Doe IAB

    supervising officers acted under color of state law to violate Mr. Gonzalez's right to be free

    from unreasonable searches under the Fourth Amendment to the United States Constitution.

32. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr.

    Gonzalez suffered and continues to suffer psychological pain, humiliation, and mental anguish.

33. Defendant Masse and John Doe IAB supervising officers exhibited gross negligence and/or

    reckless and/or callous indifference to Mr. Gonzalez's federally protected rights, entitling Mr.

    Gonzalez to an award of punitive damages.

### PRAYER FOR RELIEF

 WHEREFORE, Plaintiff prays that the Court will:

1.  Issue a judgment declaring that Defendant Masse and John Doe IAB supervising officers

    violated Plaintiff's Fourth and Fourteenth Amendment rights under the United States

    Constitution;

2.  Award Plaintiff damages to be determined at trial, plus prejudgment interest, for compensatory

    damages;

3.  Award Plaintiff damages to be determined at trial, plus prejudgment interest, for punitive

    damages;

4.  Award Plaintiff reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

5.  Award Plaintiff costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988; and

6.  Award such other relief as this Court may deem appropriate and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of facts and damages stated herein.

Dated: New York, New York
         November 23, 2015

<div style="margin-left:40%">

Roger S. Blank, P.C.

By: _____
Roger S. Blank (RB0003)
373 Park Avenue South, 6th Floor
New York, New York 10016
RogerBlankEsq@mac.com
917-882-2133
*Attorney for Plaintiff: Sergio Gonzalez*

</div>

# EXHIBIT  1

P.G. 208-05 Arrests - General Search Guidelines

Date Effective: 08-01-13

ARRESTING OFFICER

1. Comply with the provisions of P.G. 208-02, "Arrests-Removal to Department Facility for Processing," P.G. 208-03, "Arrests-General Processing," P.G. 208-15, "Arrests Report Preparation at Stationhouse" and the following:

SEARCH OF ARRESTED PERSONS

To maximize security and minimize potential hazards to the arresting officer, the arrested person, and other Department personnel, the following guidelines are published for the information of all members of the service:

A. FRISK/FIELD SEARCH

  (1) A frisk, performed primarily to ensure the personal safety of the arresting officer, is a methodical external body examination of the arrested person conducted immediately after apprehension to find weapons, evidence, or contraband. The frisk should be conducted before or immediately after the subject is rear handcuffed, depending upon particular circumstances, temperament of the subject, and escape potential. A thorough external body examination is made by sliding the hand over the subject's body, feeling for weapons or other objects, with special attention to the waistband, armpit, collar, and groin areas. If an unusual object is detected, the officer will reach into or under the clothing to remove it.

B. SEARCH AT POLICE FACILITY

  (1) Upon arrival at precinct of arrest or other Department facility, the arresting officer (if he/she is of the same gender as prisoner) or another designated member of the same gender as the prisoner, shall conduct a thorough search of the prisoner's person and clothing to ensure the safety of all persons within the facility and to remove weapons, contraband, and evidence not discovered by the frisk. Other items lawfully carried but that are dangerous to life, may facilitate escape, or may be used to damage Department property will also be removed from the subject.

  (2) A search at a police facility, which is not the same as a "strip search," includes the removal of outer garments such as overcoats, jackets, sweaters, vests, hats, wigs, ties, belts, shoes and socks, handbags, and wallets. All pockets are to be emptied and all clothing not removed will be examined by grabbing, crushing, and squeezing the garments and by sliding the hands across the body to detect articles that may be underneath or sewn to the clothing.

(3) In order to achieve a balance between the privacy and personal dignity concerns of arrestees, the desk officer or supervisor supervising a search at a police facility shall assign a uniformed member to conduct the search as follows:

   a. In situations where an arrestee's gender is not immediately apparent or an arrestee objects to the gender of the member assigned to perform the search, the desk officer or supervisor supervising the search will assign a uniformed member of the gender requested by the arrestee, consistent with officer safety and resource availability. Consistent with the privacy concerns of the arrestee, only those officers reasonably necessary to conduct the search should be present for the search.

   b. Under no circumstances shall members of the service conduct searches for the purpose of determining gender. Additionally, officers shall not ask questions about an arrestee's anatomy without a reasonable basis for doing so. Refer to P.G. 203-10,"Public Contact - Prohibited Conduct."

   NOTE: In the event the gender of the officer assigned to conduct the search differs from the gender requested by the arrestee, the desk officer or supervisor supervising the search shall make a detailed entry in the Command Log regarding the factors considered in assigning member(s) to conduct the search and identities of the uniformed member(s) who actually conducts the search.

## C. STRIP SEARCH

   (1) A strip search is any search in which an individual's undergarments (e.g., bra, underwear, etc.) and/or private areas are exposed or in which an individual's clothing is removed, lifted up, or pulled down to expose undergarments or private areas. A strip search of a prisoner may not be conducted routinely in connection with an arrest. Strip searches may only be conducted with the knowledge and approval of the arresting officer's immediate supervisor or the borough Court Section supervisor. A strip search may only be conducted when the arresting officer reasonably suspects that weapons, contraband or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods.

   NOTE: If a strip search is conducted, such information will be entered in the Command Log, arresting officer's ACTIVITY LOG (PD112-145), and also documented on the ON-LINE BOOKING SYSTEM ARREST WORKSHEET (PD244-159) or the ARREST REPORT SUPPLEMENT (PD244-157). A subsequent strip search will not be conducted unless there is reasonable belief that the subject has acquired a weapon or contraband.

   (2) The arresting officer requesting authorization to conduct a strip search must describe the factual basis for the request to the officer's immediate supervisor/ borough Court Section supervisor. A supervisor will authorize a strip search only when an arresting officer has articulated a reasonable suspicion that the individual is concealing evidence, contraband, or a weapon. Note, this is a different standard than the probable cause required for the arrest. The immediate supervisor of the arresting officer/borough

Court Section supervisor, based on the facts presented, will determine if a strip search should be conducted. The supervisor authorizing the strip search is responsible for ensuring the search is conducted properly.

  (3) Other factors that should be considered in determining whether an appropriate basis exists for a strip search include the nature of the crime (i.e., serious violent felony), arrest circumstances, subject's reputation (i.e., extremely violent person), acts of violence, unaccounted "hits" on magnetometers or walk-through metal detectors, and any discoveries or information from previous searches of the same individual or others arrested with him/her.

  NOTE: In cases where there is a disagreement between the desk officer and an arresting officer's immediate supervisor from an outside command as to whether or not to conduct the strip search, the desk officer will notify the precinct/police service area/ transit district commanding officer or duty captain. The precinct/police service area/ transit district commanding officer or duty captain will make the final decision whether or not to conduct the strip search.

  (4) A strip search shall be conducted only by a member of the same gender as the arrested person, in a secure area, in utmost privacy, and in the presence of only those members of the service reasonably necessary to conduct the search. In order to achieve a balance between the privacy and personal dignity concerns of arrestees, the desk officer or supervisor supervising a strip search shall assign a uniformed member to conduct the search as follows:

    a. In situations where an arrestee's gender is not immediately apparent or an arrestee objects to the gender of the member assigned to perform the search, the desk officer or supervisor supervising the search will assign a uniformed member of the gender requested by the arrests, consistent with officer safety and resource availability.

    b. Under no circumstances shall members of the service conduct searches for the purpose of determining gender. Additionally, officers shall not ask questions about an arrestee's anatomy without reasonable basis for doing so. Refer to P.G. 203-10, "Public Contact - Prohibited Conduct."

  NOTE: In the event the gender of the officer assigned to conduct the search differs from the gender requested by the arrestee, the desk officer of supervisor supervising the search shall make a detailed entry in the Command Log regarding the factors considered in assigning member(s) to conduct the search and identities of the uniformed member(s) who actually conducts the search.

  It should not be necessary to touch the subject's body, except for the examination of the hair. UNDER NO CONDITIONS SHALL A BODY CAVITY SEARCH BE CONDUCTED BY ANY MEMBER OF THE SERVICE. If pursuant to a strip search, any object or foreign material is visually detected within any body cavity of the suspect, the desk officer will be notified immediately. The object WILL NOT be removed without first

obtaining a search warrant. Once the search warrant is obtained, members of the service must seek the assistance of a medical professional in order to remove the object.

  (5) A strip search will not be conducted after a decision is made to void an arrest or to release the prisoner immediately upon issuance of a summons.

RELATED PROCEDURES

Public Contact - Prohibited Conduct (P.G. 203-10)

Arrests- Removal to Department Facility for Processing (P.G. 208-02)

Arrests-General Processing (P.G. 208-03)

Arrests-Security Measures (P.G. 208-06)

Arrest Report Preparation at Stationhouse (P.G. 208-15)

Arrests - License Checks, Warrant Name Checks and Notifications to the Organized Crime Control Bureau Field Operations Desk (P.G. 208-21)

FORMS AND REPORTS

ACTIVITY LOG (PD112-145)

ARREST REPORT- SUPPLEMENT (PD244-157)

ON-LINE BOOKING SYSTEM ARREST WORKSHEET (PD244-159)